# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 14-078V
(not to be published)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * * | Special Master Corcoran |
| CHRISTINA E. POPE, *parent and next friend of* B.P., *a minor*, | Filed: September 11, 2017 |
| Petitioner, | Decision; Attorney's Fees and Costs; Diphtheria Tetanus acellular Pertussis ("DTaP") Vaccine; Pneumococcal Conjugate Vaccine ("PCV"); Encephalopathic Developmental Regression; Autism. |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Richard Gage*, Richard Gage, P.C., Cheyenne, WY, for Petitioner.

*Justine Walters*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION GRANTING IN PART AN AWARD OF ATTORNEY'S FEES AND COSTS[1]**

On January 27, 2014, Christina E. Pope, on behalf of her son, B.P., filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] In it, Mrs. Pope alleged that the Diphtheria Tetanus acellular-Pertussis and pneumococcal conjugate vaccines B.P. received on May 11, 2011, caused him to experience an encephalopathic developmental regression into autism, as well as immunoglobulin deficiencies, exacerbated by an underlying mitochondrial dysfunction. Petition at 1-2.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

About six months after the petition was filed, Respondent filed his Rule 4(c) Report contesting Petitioner's claim. Thereafter, the parties began to file additional medical records and expert reports, a process that took nearly two years. After all the expert reports had been filed, I held a status conference with the parties expressing my concerns about the viability of Petitioner's claim, given the lack of success of similar autism claims. *See* Scheduling Order, dated April 4, 2016 (ECF No. 41).

Based on my concerns, I invited Respondent to move for a ruling on the record, as I thought a hearing would not be necessary to resolve the claim. Respondent did so on August 29, 2016 (after receiving two extensions of time), followed by Petitioner filing additional medical records and a memorandum in reaction to Respondent's motion. *See* Motion for Ruling on the Record, dated Aug. 29, 2016 (ECF No. 46); Memorandum, dated Nov. 14, 2016 (ECF No. 54). After considering the entire record, I issued a decision denying compensation on May 1, 2017. *See* Decision, dated May 1, 2017 (ECF No. 60). The decision was not appealed.

Petitioner has now filed a motion requesting an award of attorney's fees and costs.[3] *See generally* Motion for Attorney's Fees and Costs, dated Aug. 11, 2017 (ECF No. 64) ("Fees App."). Petitioner requests an award of $71,683.60 ($55,978.98 in attorney's fees, plus $15,704.62 in costs expended by Petitioner's counsel). Fees App., Tab A. In accordance with General Order No. 9, Petitioner stated that she incurred no personal costs associated with the case. *Id.*, Tab I. Respondent filed a brief in reaction on August 21, 2017, deferring to my discretion on the propriety and amount of an award of attorney's fees and costs. *See* Response to Motion for Attorney's Fees, filed on Aug. 21, 2017 (ECF No. 65). Petitioner did not file a reply.

**ANALYSIS**

Although Respondent has not challenged the existence of reasonable basis in this case, I find it necessary to address the subject, given that so many similar claims involving allegations that a child's autism is vaccine-caused have been dismissed. *Cunningham v. Sec'y of Health & Human Servs.,* No. 13-483V, 2016 WL 4529530 (Fed. Cl. Spec. Mstr. Aug. 1, 2016) *mot. for review den'd*, 2017 WL 1174448 (Fed. Cl. Mar. 22, 2017). I have in prior decisions set forth at length the relevant legal standards governing attorney's fees awards in unsuccessful cases, and in particular the criteria to be applied when determining if a claim possessed reasonable basis.[4] *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906 at 4-5 (Fed.

---

[3] The title of this motion is "Application for award of interim attorney's fees and reimbursement of costs," but it seems to be a final fees request, and will be treated as such. Fees App. at 1.

[4] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

Cl. Spec. Mstr. May 26, 2016) *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015).

In short, a petitioner must demonstrate reasonable basis through some evidentiary showing and in light of the totality of the circumstances. The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing (and here, particularly after the OAP test cases were concluded) is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

Under other circumstances (for example, if counsel had repeatedly pursued autism claims despite my admonitions and their overall track record in the Vaccine Program), I would likely not award <u>any</u> final fees herein. However, because this is the first instance, in the years following the conclusion of the omnibus autism proceedings,[5] in which present counsel has requested final fees in an autism case assigned to me, and because it appears that counsel exercised good billing judgment, I will allow a final fees award, subject to the revisions set forth herein. Counsel is admonished that I am unlikely to exercise such leniency with future autism claims he may bring before me, however.

Petitioner requests that Mr. Gage be compensated at varying rates from 2013-2017 based on my previous findings about his proper billing rate. Fees App., Tab C, *See also Auch v. Sec'y of Health & Human Servs.,* No. 12-673, 2016 WL 3944701 (Fed. Cl. Spec. Mstr. May 20, 2016). In *Auch*, which only involved work performed through 2015, I awarded hourly rates of $294.86, $299.64, and $300.00 for 2013-2015, respectively, basing my yearly increase on the consumer price index ("CPI"). *Auch*, 2016 WL 3944701, at *12.

In the present request, Petitioner requests rates for 2013-2015, plus 2016-2017 ($303.78, $308.34), also consistent with the CPI. Fees App., Tab C. The special masters, however, currently favor using the producer price index for the office of lawyers ("PPI-OL") as the rate inflator rather than the CPI. I will not adjust the rates that I previously awarded in *Auch*, but I will adjust the rates for 2016 and 2017 consistent with the PPI-OL. Thus, the new rate for 2016 for Mr. Gage is $306.00 per hour, and the hourly rate for 2017 is $314.00.[6] This results in a total increase of the amount

---

[5] Mr. Gage currently has another autism case pending before me, in which I awarded him interim attorney's fees, but after the parties stipulated to an amount. *Kreizenbeck v. Sec'y of Health & Human Servs.,* No. 08-209, 2015 WL 10434874 (Fed. Cl. Spec. Mstr. Oct. 19, 2015).

[6] The PPI-OL rate for 2016 was derived by multiplying Mr. Gage's 2015 rate, consistent with *Auch*, of $300 by the PPI-OL index for January 2015 (196.8) and then dividing by the PPI-OL index for January 2014 (192.7), after rounding to the nearest dollar, the hourly rate for 2016 came to $306. Similarly to calculate the 2017 rate, the 2016

3

requested for Mr. Gage of $109.09, for a new total of $23,579.54 ($23,470.45 + $109.09=$23,579.54).

      Petitioner also requests compensation for several associates and paralegals of Mr. Gage. Two associates billed at a consistent hourly rate of $251.00 (except for three 2017 billing entries at an hourly rate of $253.75), while two others billed at $145 per hour. Fees App., Tabs D-G. These rates appear to be reasonable and I will award them.[7] Finally, Petitioner requests reimbursement of paralegal time at varying rates—$110.00, $112.00, $113.41, and $115.11 for 2013-2017, respectively. I find that these rates are reasonable and will award them. Adding these fees to Mr. Gage's new attorney's fees amount, the total potentially awardable is $56,088.07 ($23,579.54 + $32,508.53=$56,088.07).

      Despite the above, I find an adjustment to the total <u>amount</u> of attorney's fees to be awarded is appropriate. I will reduce the total fees request by 20 percent, to account for the low likelihood of success in pursuing an autism claim, especially given the numerous other autism dismissal decisions that were issued while this case was pending. *See e.g., R.V. v. Sec'y of Health & Human Servs.,* No. 08-504V, 2016 WL 3882519, at *25 (Fed. Cl. Spec. Mstr. Feb. 19, 2016); *Murphy v. Sec'y of Health & Human Servs.*, No. 05-1063, 2016 WL 3034047, at *37 (Fed. Cl. Spec. Mstr. April 25, 2016); *Wolf v. Sec'y of Health & Human Servs.*, No. 14-342V, 2016 WL 6518581, n. 13 (Fed. Cl. Spec. Mstr. Sept. 15, 2016); *Tebault v. Sec'y of Health & Human Servs.,* No. 16-478, 2016 WL 6903568 (Fed. Cl. Spec. Mstr. Oct. 27, 2016). After applying this reduction, the amount of attorney's fees and paralegal costs to be awarded is $44,870.46 ($56,088.07 x .8=$44,870.46).

      Finally, Petitioner requests $15,704.62 in costs. Fees App., Tab H. Those costs include two categories, copying and obtaining medical records ($879.45), and expert costs ($14,825.17). I will award the former category in full as they appear to be reasonable. I will however, make some adjustments to the requested expert costs billed by Dr. Kinsbourne. Dr. Kinsbourne's billing records indicate two different rates. He bills at an hourly rate of $300 for administrative tasks such as telephone calls and emailing (for a total of 7 hours in this case), while he bills at $500 per hour for more substantive work—reviewing medical literature and drafting his reports (17.65 hours in this case). While I find the former category reasonable and will award it as requested, I will reduce the latter rate to $400 per hour consistent with that awarded by other special masters. *See e.g., Faoro v. Sec'y of Health & Human Servs.*, No. 10–704V, 2014 WL 5654330, at *4 (Fed. Cl. Spec. Mstr. Oct. 15, 2014). This results in a total reduction of $1,765.00. The remaining costs incurred

---

hourly rate was multiplied by the PPI-OL index for January 2016 (201.8) and then divided by the PPI-OL index for January 2015 (196.8), after rounding to the nearest dollar, the hourly rate for 2017 came to $314.

[7] While I am awarding the associate rates as requested, Petitioner should in the future provide more information about the experience of each associate working on the case. With so little to go on (in this case only the name and initials of the individuals) it was difficult to determine the proper rate.

by Dr. Harum will be awarded as requested. Thus the total costs to be awarded is $13,939.62 ($15,704.62-$1,765.00=$13,939.62).

## CONCLUSION

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of attorney's fees and costs awards, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs, awarding **$58,810.08** ($44,870.46 + $13,939.62=$58,810.08) in fees and costs made payable jointly to Petitioner's counsel, Richard Gage, Esq., and Petitioner. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[8]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.